## Costs of Committing Mental Patients

WOODWARD, Deputy Attorney General, April 22, 1942.—We have your request for advice concerning the costs of commitment of mental patients and their transportation to State institutions under the provisions of the Act of October 11, 1938, P. L. 63, 50 PS §141.

You call our attention to the fact that formerly these costs were borne by the county or poor district. In

substance, you inquire how these costs shall hereafter be paid.

Your request involves a consideration of certain provisions of The Mental Health Act of July 11, 1923, P. L. 998, 50 PS §1 et seq., as amended.

Section 501 of said act, as last amended by the Act of October 11, 1938, P. L. 63, reads in part as follows:

"Whenever any patient who is mentally ill, mentally defective, epileptic, or inebriate is admitted to any mental hospital, whether by order of a court or judge, or in any other manner authorized by the provisions of this act, *the cost of such admission or commitment shall be deemed to include the expenses of removing such patient to the hospital*, the fees of physicians or commissioners, and all other necessary expenses however incurred. Such costs shall be chargeable to the estate of such patient, or to the person liable for his support: Provided, That if such estate or person is unable to pay the same, *the Commonwealth shall be liable for such costs*." (Italics supplied.)

This amendatory Act of 1938, supra, became effective June 1, 1939, but the act was subsequently amended by the Act of May 25, 1939, P. L. 195, 50 PS §21, so as to become effective June 1, 1941.

Section 501, as amended, is in harmony with section 503 of The Mental Health Act, supra, as amended by the Act of 1938, supra, 50 PS §143, which places the liability for the costs of care and maintenance, including clothing, in such cases, upon the Commonwealth, and reads in part as follows:

"Whenever any mental patient is admitted . . . to any mental hospital maintained wholly or in part by the Commonwealth, *the cost of care and maintenance, including clothing, of such patient* . . . if he is financially unable to pay such expenses or any proportion thereof, then such expenses or the proportion thereof which cannot be collected from the patient, or the per-

son liable for his support, *shall be paid by the Commonwealth*." (Italics supplied.)

Section 503 was construed in formal opinion no. 403, of the Department of Justice, dated November 21, 1941, addressed to Hon. E. Arthur Sweeny, Secretary of Welfare of the Commonwealth of Pennsylvania, in which the following conclusion was reached:

"We are of the opinion, therefore, and you are accordingly advised that the costs of the care and maintenance of a mental patient in any mental hospital maintained wholly or in part by the Commonwealth must be defrayed from the real or personal property of such patient. If he is financially unable to pay such expenses or any proportion thereof, then such expenses or the proportion thereof which cannot be collected from the patient, or the person liable for his support, shall be paid by the Commonwealth."

The foregoing amendatory legislation is also in accord with the theory of State-wide care and maintenance for mental patients, as stated in the preamble to the Act of 1938 which transferred the mental institutions to the Commonwealth, the Act of September 29, 1938, P. L. 53, 50 PS §1051 et seq., which is, in part, as follows:

"Experience has proven that the care and maintenance of indigent mentally ill persons, mental defectives and epileptics should be *centralized in the State Government* in order to insure their proper and uniform care, maintenance, custody, safety and welfare." (Italics supplied.)

Therefore, we have little difficulty in reaching the conclusion that, under the circumstances hereinbefore set forth, the Commonwealth is liable for the costs in question.

Your request raises the further question as to the appropriation out of which such expenses are to be paid. With reference to this question, you call our at-

tention to the fact that the only sources of funds which might be used for this purpose are the maintenance appropriations of the mental hospitals to which such patients might be committed or the appropriation to the Department of Welfare for salaries and general expenses.

The appropriation for salaries and general expenses of the Department of Welfare is contained in Appropriation Act No. 12-A, approved June 16, 1941, The General Appropriation Act of 1941, where it is provided, p. 33, inter alia, as follows:

"To the Department of Welfare

". . . For the payment of salaries, wages or other compensation of a deputy secretary and other employes; for the payment of general expenses, supplies, printing and equipment necessary for the proper conduct of the work of the department, . . . ($392,000)."

It must be obvious that the costs of admission or commitment of mental patients and their transportation to State institutions cannot be embraced in the foregoing appropriation.

The other appropriation suggested as available for the purpose is that which includes, among other items, the expenses of maintenance and operation of institutions for the care and treatment of the insane.

This appropriation is also included in Appropriation Act No. 12-A, supra, and is in part as follows:

". . . for the payment of general expenses, supplies and printing; for repairs, alterations and improvements to plant and equipment; for improvements to land; for the purchase of equipment, furniture, furnishings and live stock; for expenses of the boards of trustees and incidental expenses, and for all other expenses of maintenance and operation necessary for the proper conduct of the work of the Allentown State Hospital . . . and any other institution established for the care and treatment of the insane as may be authorized and approved by the Secretary of Welfare,

the sum of twenty-two million eight hundred fifty thousand dollars ($22,850,000)."

It will be noticed that the appropriation covers "all other expenses of maintenance and operation necessary for the proper conduct of the work of the" institutions for the insane.

This language has raised a doubt as to whether the costs of the admission or commitment of a mental patient and the expenses of removing such patient to the hospital and all other necessary expenses may be considered as expenses of maintenance and operation necessary for the proper conduct of the work of the institutions for the insane.

However, we are informed that among expenses of maintenance and operation of such institutions are usually included such costs as the operation of health clinics outside the mental institutions and the expenses of social services performed also outside the institutions in connection with mental patients while on parole.

It is logical to conclude that the expenses incident to the admission, commitment, and transportation of mental patients are an expense of maintenance and operation necessary for the proper conduct of the work of the institutions for the insane.

It must be presumed that the legislature intended Appropriation Act No. 12-A, supra, to include these costs of admission or commitment and transportation of mental patients enumerated in section 501, as amended, supra, since the act itself carries no express appropriation for the payment of these expenses.

We are of the opinion, therefore, and you are accordingly advised that:

1. The costs of admission or commitment including the expenses of removal to any mental hospital of a patient who is mentally ill, mentally defective, epileptic, or inebriate, shall be chargeable to the estate of such patient or to the person liable for his support;

provided, that if such estate or person is unable to pay the same the Commonwealth and not the county or poor district shall be liable for such costs, in accordance with the provisions of section 501 of The Mental Health Act as amended; and

2. Such costs are payable out of moneys appropriated under Appropriation Act No. 12-A, The General Appropriation Act of 1941, to provide for the payment of all expenses of maintenance and operation necessary for the proper conduct of the work of the institutions established for the care and treatment of the insane.